NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

ANGELO ORTIZ, et. al.

                    Plaintiff,

     v.

OCEAN COUNTY PROSECUTOR'S
OFFICE, et al.

              Defendants.

CIVIL NO. 03-3732 (SRC)

**OPINION**

**CHESLER, District Judge**

    **THIS MATTER** comes before the Court on a Motion for Summary Judgment by defendants Toms River Regional Schools Board of Education[1] and Anne Baldi (collectively the "Defendants") (docket entry # 55).   The Court, having considered the papers submitted by the parties, for the reasons set forth below, and for good cause shown, **GRANTS** Defendants' Motion.

**I.**    **PROCEDURAL BACKGROUND**

    On or about August 7, 2003, Plaintiffs filed a ten-count Complaint asserting causes of actions for alleged violations of the Fifth and Fourteenth Amendments (Count One), Deliberate

---

    [1] The Complaint filed by Plaintiffs in this case incorrectly named this defendant as "Toms River High School."

Indifference (Count Two), violations of 42 U.S.C. §§ 1983, 1985, and 1986 (Counts Three, Four and Five), Negligence (Count Six), Defamation (Count Seven), Abuse of Process (Count Eight), Malicious Prosecution (Count Nine), and Intentional Infliction of Emotional Distress (Count Ten).  (See Compl.)  Plaintiffs are the mother, father, and siblings of Damian Ortiz.  (Id. at 2 ¶¶ 1 - 4.)  The lawsuit alleges causes of action by the Plaintiffs individually and on behalf of Damian Ortiz.  Defendants Anne Baldi, the Assistant Principal of Toms River High School, and Ms. Baldi's employer, the Toms River Regional Schools Board of Education ("TRRSBE") are moving to have the claims against them dismissed.

## II.     FACTS

This origins of this case arise from the investigation, prosecution, and subsequent guilty plea of Plaintiffs' decedent, Damian Ortiz, on charges that he, along with several of his friends, sexually assaulted defendant Nicole Ward.  Damian was, at the time of this incident, seventeen years old and enrolled in the twelfth grade at Toms River High School ("TRHS").  Defendant Nicole Ward was, at the time of this incident, sixteen years old and also attended TRHS.  Nicole was enrolled in the tenth grade, although she had been diagnosed with some developmental disabilities and had been classified as a special education student.

In January 2002, Nicole told to one of her teachers at TRHS, Ms. Sofie, that she had been sexually assaulted by Damian and others while attending a party in July 2002.  The party was held by defendant Gail Nissman's son at Ms. Nissman's residence in Toms River New Jersey.  Ms. Sofie reported this information to the school's Assistant Principal, defendant Anne Baldi.  Ms. Baldi subsequently called the Toms River Police Department ("TRPD") to report Nicole's

allegations.

The TRPD advised Ms. Baldi that they should take a report on this incident directly from Nicole.  On or about February 1, 2002, Nicole and her mother, defendant Elizabeth Dante, came into the police department to file a complaint accusing Damian and others of sexually assaulting her at the July 2002 party.  Following additional investigation of the charges by the TRPD, a complaint was filed against Damian for aggravated sexual assault on or about February 14, 2002.  Later that day, two detectives from the TRPD went to TRHS to take Damian into custody.  Damian was subsequently arrested at school and, according to the Plaintiffs' Complaint, questioned by the police at the school for forty-five minutes before his parents, plaintiffs Angelo and Elaine Ortiz, were called.[2]

On or about August 22, 2002, Damian pled guilty to downgraded charges of conspiracy to commit sexual assault against Nicole Ward.  The state court judge accepted Damian's plea after questioning his understanding of the plea bargain, his knowledge of his rights, and the voluntariness of his decision to enter the guilty plea..  The plea hearing revealed the following account regarding the incident involving the sexual assault.  Nicole Ward was sexually assaulted on July 25, 2001.  (Tr. of Plea, at 13-15.)  On that day, Damian Ortiz and two of his friends invited Nicole to a party.  (Id. at 10-11.)  One of those friends picked up Nicole and brought her

---

[2] It is worth noting that this account differs from the report filed by the TRPD.  According to the police report, Damian was handcuffed and transported to the police station and placed in a juvenile holding cell.  (Toms River Police Dept. Supp. Investigation Rpt. at 12.)  Damian remained in this cell while police tried to notify his parents.  (Id.)  Upon reaching Damian's father, Mr. Ortiz advised the police that he was not coming to pick up his son, and they did not have consent to talk to Damian about the crime under investigation.  (Id.)  When advised of the charges against him, and his father's response, Damian made an angry response claiming that he was innocent and that Ms. Ward was a willing participant in the sexual activity at the July 2002 party.  (Id. at 13.)

to the party held at Ms. Nissman's home. (Id. at 11.)  Damian was already at the party and before

Nicole's arrival, he and his friends talked about having sex with Nicole that afternoon regardless

of "whether she was up for it." (Id. at 12.)  Damian believed that Nicole would have sex with

whomever wanted it. (Id. at 13.)  Although Damian claimed he did not have sexual contact with

Nicole that afternoon, he was aware that others were upstairs in a room with her. (Id.)  He later

learned that while in that room, several people did have sexual contact with her.  (Id. at 14.)

When she emerged from the room, Damian described Nicole to be laughing and not upset, but

also admitted that he and others spit at her and called her names.  (Id. at 15.)

     As part of Damian's plea bargain, he agreed to testify truthfully against another individual

implicated in the sexual assault.  Before testifying, however, Damian committed suicide on

October 27, 2002.  Subsequently, in August 2003, Plaintiffs filed a ten-count Complaint in this

Court contending, among other things, that their son's suicide was prompted by his desire "not to

falsely testify or to face the possibility of spending a substantial portion of his life in prison for an

act he did not commit." (Complaint at 5, ¶ 17.)  The Plaintiffs' claims against the current

Defendants, TRRSBE and Ms. Baldi, assert that they initiated "the continuum leading to

Damian's death" by (1) notifying the TRPD of Nicole's allegations; (2) allowing the police to

arrest Damian at the school; (3) allowing the police to question Damian at the school without his

parents' consent or presence; and (4) breaching a duty to protect Damian by initiating the police

investigation of his activities.  (Pl. Br. at 4.)  These actions, it is alleged, led directly to Damian's

criminal prosecution, guilty plea, and subsequent suicide.

     The Plaintiffs' complaint sues a number of defendants, including TRRSBE and Ms.

Baldi, for various claims in tort and negligence.  The current Defendants have sought summary

judgment in their favor on all counts.  The Plaintiff, in their response to Defendants' motion, concedes that only two of the ten Counts, Count Six and Count Ten, of the Complaint "are at issue on this motion," leaving dismissal of the other counts unopposed.  (Pl. Br. at 4.)  The two Counts remaining against these Defendants are that they were negligent in their actions, and that their actions constituted an intentional infliction of emotional distress upon the Plaintiffs.  (See Compl. at 9 - 12.)


III.    DISCUSSION

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996).  In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.   Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48.  The non-moving party must "go beyond the

5

pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993).  Consistent with this standard, the Court will review each of the Defendant's arguments in turn.

**A.**    **The Plaintiff's Negligence Claims[3] are Barred by the Notice Provisions of the New Jersey Tort Claims Act**

Both of the current Defendants are protected by the New Jersey Tort Claims Act ("NJTCA").  TRRSBE is a public entity as defined in N.J.S.A. 59:1-3 and Ms. Baldi is a public employee of that entity under the same statutory definition.  Any claims against these Defendants, therefore, must comply with the provisions of the NJTCA, including the Act's Notice of Claim Requirements.  N.J.S.A. 59:8-3; see also Lowe v. Zarghami, 158 N.J. 606 (1999) (noting that "notice requirements under N.J.S.A. 59:8-3 [are] applicable to both public entities and public employees.")  A suit will be dismissed if the claimant did not provide notice

---

[3] The Defendants have aptly noted in their filings with this Court that Count Six of the Plaintiff's complaint, which contains the allegations of negligence, is limited in stating a claim specifically against co-defendant Nissman.  (Def. Br. at 2.)  This Count specifically alleges that Ms. Nissman was negligent in permitting minors to congregate at her home without adequate supervision and to consume alcoholic beverages at her residence.  (Compl. at 9 - 10.)  While neither defendants TRRSBE or Ms. Baldi are mentioned in this Count, the Court need not determine whether, as Plaintiffs allege, this Count also applies to Ms. Baldi or TRRSBE since any state law negligence claims against these Defendants would be procedurally barred by the Plaintiff's failure to adhere to the Notice of Claim Requirements of the NJTCA.

of claim to the entity within ninety days of the "accrual of a cause of action." N.J.S.A. 59:8-8. Failure to provide notice within this statutory timeframe is grounds for dismissal with prejudice. Sinclair v. Dunagan, 905 F.Supp. 208, 212 (D.N.J. 1995).

Courts have limited discretion in allowing a plaintiff to file late notice, based on "sufficient reasons constituting extraordinary circumstances," if a motion is made within a year of the accrual date. N.J.S.A. 59:8-9. Once the one-year outer time limit has passed, however, a court cannot consider allowing late notice, regardless of the extraordinary circumstances presented or potential prejudice of dismissing the claim. Davis v. Township of Paulsboro, 371 F.Supp.2d 611, 618 (D.N.J. 2005). Plaintiffs have not filed a proper or timely notice of claim against either of these Defendants. The one year time limit has also passed since any claims against these Defendants would have accrued. Any potential negligence claims, therefore, would be barred by operation of N.J.S.A. 59:8-8(a). Accordingly, Defendants' motion to dismiss the negligence claims of Count Six against Ms. Baldi and TRRSBE is **GRANTED**.

**B.      The Plaintiff's Intentional Infliction of Emotional Distress Claim Against TRRSBE is Also Barred by the Notice Provisions of the New Jersey Tort Claims Act**

In addition to their negligence claim, the Plaintiff also brings an intentional tort claim for intentional infliction of emotional distress against the Defendants. This claim, as brought against a public entity such as TRRSBE, is similarly barred by the notice provisions of the NJTCA. See Garlanger v. Verbeke, 223 F.Supp.2d 596, 602 (D.N.J. 2002) (noting TCA notice requirement applicable to claims for intentional infliction of emotional distress against public entity). Accordingly, the Defendants' motion to dismiss the intentional infliction of emotional distress

claim against TRRSBE is **GRANTED**.

Plaintiffs' claims against Ms. Baldi in her individual capacity, however, is not covered by the notice of claim requirements of the NJTCA.  While notice of claim provisions currently apply to causes of action based on the intentional conduct of public employees, the caselaw extending this provision did so prospectively and not retroactively.  See Velez v. City of Jersey City, 180 N.J. 284, 297 (2004).  Under Velez, causes of action accruing after July 29, 2004 are required to comply with the notice of claim provisions.  Id.  Causes of action alleging intentional torts against public employees that accrued prior to June 29, 2004, however, are not required to adhere to the notice of claim provisions.  Davis, 371 F.Supp. at 619.  Because the alleged cause of action here occurred prior to June 29, 2004, the claim against Ms. Baldi, in her individual capacity, for intentional infliction of emotional distress is not barred by the notice provision of the NJTCA.

C.     **While Not Barred by Notice Provisions of the NJTCA, Plaintiffs' Intentional Infliction of Emotional Distress Claims Against Ms. Baldi Fail to State a Claim Upon Which Relief Can Be Granted**

The Plaintiffs claim for intentional infliction of emotional distress against Ms. Baldi on behalf of Damian's family members is based on the "severe and emotional distress that [they] experienced (and continue to experience following and in consequence of finding Damian hanging dead in the family garage." (Pl. Br. at 3.)  While New Jersey case law recognizes a cause of action for infliction of emotional distress upon a close relative of a decedent, such a cause of action requires that the distress be caused by that relative's first hand observation of the death itself.  Portee v. Jaffee, 84 N.J. 88, 101 (1980).  Here, Damian's family is not basing their

8

emotional distress claim upon witnessing Damian's death firsthand, but rather on the emotional impact of having discovered him following his suicide.  While "[d]iscovering the death or serious injury of an intimate family member will always be expected to threaten one's emotional welfare," without direct observation of the death or serious injury, "the threat of emotional injury is lessened and the justification for liability is fatally weakened." Id. at 99.  Because the Plaintiffs' claim for intentional infliction of emotional distress brought by Damian's family members against Ms. Baldi is not one that is recognized under New Jersey Law, the Defendants' motion to dismiss this claim is **GRANTED**.

The Plaintiffs also raise a claim against Ms. Baldi on behalf of the decedent, Damian Ortiz, for intentional infliction of emotional distress.  For intentional infliction of emotional distress, Plaintiffs must allege, among other criteria, "intentional and outrageous conduct by the defendant." Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 366 (1988).  To sustain such a claim, the conduct at issue must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting RESTATEMENT (SECOND) OF TORTS § 46 comment d (1965)).

As the basis for their claim, the Plaintiffs cite four specific actions undertaken by Ms. Baldi:  (1) Ms. Baldi's notification to the TRPD of Nicole's charges against Damian; (2) Ms. Baldi's failure to prevent the police from arresting Damian at the school; (3) Ms. Baldi's failure to prevent the police from questioning Damian at the school without his parent's consent or presence; and (4) Ms. Baldi's failure to protect Damian by initiating the police investigation of his activities.  (Pl. Br. at 4.)  Ms. Baldi was an Assistant Principal at a high school who was

presented with a credible allegation by one of her students that she had been sexually assaulted by a group of fellow students in her school.  Ms. Baldi's decision, as a school administrator, to notify the police about such a serious allegation being made by one of her students against a group of fellow students and her subsequent cooperation with the police in their investigation of these criminal charges was an appropriate and responsible response to the circumstances presented to her.  Such actions cannot reasonably be characterized as the type of extreme and outrageous behavior that is required to support a claim of intentional infliction of emotional distress.  Accordingly, Defendant's motion to dismiss the claim brought on behalf of Damian Ortiz for intentional infliction of emotional distress against Ms. Baldi is **GRANTED**.

## IV.    CONCLUSION

For the reasons stated above, and for good cause shown, the Defendant's Motion for Summary Judgment is hereby **GRANTED**.  An appropriate form of order will be filed herewith.

Date:   November 22, 2005

  s/Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.

10