NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELO ORTIZ, et. al. | |
| Plaintiff, | CIVIL NO. 03-3732 (SRC) |
| v. | **OPINION** |
| OCEAN COUNTY PROSECUTOR'S OFFICE, et al. | |
| Defendants. | |

**CHESLER, District Judge**

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendants Dover Township Police Department (incorrectly named in the Plaintiffs' Complaint as Tom's River Police Department) and Detective Michael Malachefski (collectively the "Defendants") (docket entry # 66). The Court, having considered the papers submitted by the parties, for the reasons set forth below, and for good cause shown, **GRANTS** Defendants' Motion.

### I.  PROCEDURAL BACKGROUND

On or about August 7, 2003, Plaintiffs filed a ten-count Complaint asserting causes of action for alleged violations of the Fifth and Fourteenth Amendments (Count One), Deliberate

1

Indifference (Count Two), violations of 42 U.S.C. §§ 1983, 1985, and 1986 (Counts Three, Four and Five), Negligence (Count Six), Defamation (Count Seven), Abuse of Process (Count Eight), Malicious Prosecution (Count Nine), and Intentional Infliction of Emotional Distress (Count Ten). (See Compl.) Plaintiffs are the mother, father, and siblings of Damian Ortiz. (Id. at 2 ¶¶ 1 - 4.) The lawsuit alleges causes of action by the Plaintiffs individually and on behalf of Damian Ortiz. Only Counts One through Five and Ten of the Plaintiffs' Complaint bring allegations against the current Defendants, Dover Township Police Department, and Michael Malachefski, a detective with the Dover Township Police Department. These Defendants are moving for summary judgment in their favor on the Plaintiffs' claims against them and to be terminated from the proceedings.

    The present motion was filed with this Court on November 2, 2005. On December 5, 2005, Plaintiffs' counsel requested an extension of time, giving them until December 9, 2005 to respond to the present motion - citing severe medical problems as the main reason for this request. The Court granted this extension on December 8, 2005. After the December 9th deadline, the Court made numerous attempts to contact Plaintiffs' counsel to obtain a status on their opposition to the present motion. These attempts were unsuccessful in either soliciting an opposition to the present motion or obtaining a status on any potential filing to oppose this motion. Finally, on July 18, 2006, this Court issued an Order (docket # 76) requiring the Plaintiffs to file their opposition on or before August 1, 2006 or the motion would be deemed unopposed. As of August 17, 2006, no opposition has been filed by the Plaintiffs nor has any other response to the Court's order been received. The Defendants' motion includes a copy of Nicole and Elizabeth Dante's answers to supplemental interrogatories propounded by Richard

Browner (Def. Br. at Ex. B), Nicole Ward's seventy-eight page statement to police regarding the incident at the core of this case (Def. Br. at Ex. C), a transcript of Damian Ortiz's alocution and guilty plea (Def. Br. at Ex. F), and the investigative report filed by Detective Malachefski detailing the investigation of the alleged rape of Nichole Ward (Def Br. at Ex. D).  The Plaintiffs have submitted nothing to refute the substantial information proffered by the Defendants in this matter, and the Court must deem the Defendants' current motion for summary judgment unopposed and handle it accordingly.

## II.  FACTS

This origins of this case arise from the investigation, prosecution, and subsequent guilty plea of Plaintiffs' decedent, Damian Ortiz, on charges that he, along with several of his friends, sexually assaulted Defendant Nicole Ward.  Damian was, at the time of this incident, seventeen years old and enrolled in the twelfth grade at Toms River High School ("TRHS").  Defendant Nicole Ward was, at the time of this incident, sixteen years old and also attended TRHS.  Nicole was enrolled in the tenth grade, although she had been diagnosed with some developmental disabilities and had been classified as a special education student.

In January 2002, Nicole told to one of her teachers at TRHS, Ms. Sofie, that she had been sexually assaulted by Damian and others while attending a party in July 2002.  The party was held by Defendant Gail Nissman's son at Ms. Nissman's residence in Tom's River New Jersey.  Ms. Sofie reported this information to the school's Assistant Principal, Defendant Anne Baldi.  Ms. Baldi subsequently called the Dover Township Police Department ("DTPD") to report Nicole's allegations.

Defendant Michael Malachefski, a detective with the DTPD, advised Ms. Baldi that he should take a report on this incident directly from Nicole. Ms. Baldi provided Detective Malachefski with the contact information for Nicole's mother, Defendant Elizabeth Dante. On or about February 1, 2002, Nicole and her mother came into the police department to file a complaint accusing Damian and others of sexually assaulting her at the July 2002 party. Detective Malachefski obtained Ms. Dante's consent to interview Nicole privately and took a statement from her regarding the incident at the July 2002 party. Following additional investigation of the charges by Detective Malachefski, a complaint was filed against Damian for aggravated sexual assault and criminal restraint on or about February 14, 2002. Later that day, Detective Malachefski, along with a fellow detective and a patrolman from the DTPD went to TRHS to take Damian into custody. Damian was subsequently arrested at school and, according to the Plaintiffs' Complaint, questioned by the police at the school for forty-five minutes before his parents, plaintiffs Angelo and Elaine Ortiz, were called.[1]  Damian was transported to the police station and placed into a juvenile holding cell. Detective Malachefski informed Ocean County Juvenile Intake to advise them of Damian's arrest and the charges being brought against him. Damian was fingerprinted, photographed, and released into the custody of his mother, Elaine Ortiz.

---

[1] It is worth noting that this account differs from the report filed by the DTPD. According to the police report, Damian was handcuffed and transported to the police station and placed in a juvenile holding cell. (Dover Township Police Dept. Supp. Investigation Rpt. at 12.) Damian remained in this cell while police tried to notify his parents. (Id.) Upon reaching Damian's father, Mr. Ortiz advised the police that he was not coming to pick up his son, and they did not have consent to talk to Damian about the crime under investigation. (Id.) When advised of the charges against him, and his father's response, Damian made an angry response claiming that he was innocent and that Ms. Ward was a willing participant in the sexual activity at the July 2002 party. (Id. at 13.)

On or about August 22, 2002, Damian pled guilty to downgraded charges of conspiracy to commit sexual assault against Nicole Ward.  The state court judge accepted Damian's plea after questioning his understanding of the plea bargain, his knowledge of his rights, and the voluntariness of his decision to enter the guilty plea..  The plea hearing revealed the following account regarding the incident involving the sexual assault.  Nicole Ward was sexually assaulted on July 25, 2001.  (Def. Br., Ex. F at 13-15.)  On that day, Damian Ortiz and two of his friends invited Nicole to a party.  (Id. at 10-11.)  One of those friends picked up Nicole and brought her to the party held at Ms. Nissman's home. (Id. at 11.)  Damian was already at the party and before Nicole's arrival, he and his friends talked about having sex with Nicole that afternoon regardless of "whether she was up for it." (Id. at 12.)  Damian believed that Nicole would have sex with whomever wanted it. (Id. at 13.)  Although Damian claimed he did not have sexual contact with Nicole that afternoon, he was aware that others were upstairs in a room with her.[2] (Id.)   He later learned that while in that room, several people did have sexual contact with her.  (Id. at 14.)  When she emerged from the room, Damian described Nicole to be laughing and not upset, but also admitted that he and others spit at her and called her names.  (Id. at 15.)

As part of Damian's plea bargain, he agreed to testify truthfully against another individual implicated in the sexual assault.  Before testifying, however, Damian committed suicide on October 27, 2002 by hanging himself in the garage of his family's home.  Subsequently, in August 2003, Plaintiffs filed a ten-count Complaint in this Court contending, among other things, that their son's suicide was prompted by his desire "not to falsely testify or to face the possibility

---

[2] Damian's alocution differed from Nicole's account of the events of that day in that Nicole specifically identified Damian as one of the individuals who she accused of raping her on that day. (Def. Br., Ex. C at 45-57.)

of spending a substantial portion of his life in prison for an act he did not commit." (Complaint at 5, ¶ 17.) The Plaintiffs' claims against the current Defendants, DTPD and Detective Malachefski, assert that they "wilfully disregarded" information that would have exculpated Damian, harassed Damian with "baseless and unprovoked stops, confinements, and threats of arrest," and applied pressure to compel him to testify against his friends. (Compl. at 4, ¶¶ 7-8, 18.) These actions, it is alleged, led directly to Damian's criminal prosecution, guilty plea, and subsequent suicide.

The Plaintiffs' Complaint sues a number of defendants, including the DTPD and Det. Malachefski, claiming numerous constitutional violations as well as levying various tort and negligence claims. The current Defendants have sought summary judgment in their favor on all counts.

### III.  DISCUSSION

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996). In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993).

Counts One through Five of the Plaintiffs' Complaint allege constitutional violations of the Fifth[3], Eighth, and Fourteenth Amendments under Title 42 U.S.C. §§ 1983, 1985 and 1986. Section 1983 provides civil remedies against any person who, under color of state law, deprives another of rights protected by the United States Constitution. See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). Section 1983 does not, by itself, confer any substantive rights, but rather serves as a vehicle to enforce rights granted under the Constitution or federal law. Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). Accordingly, to state a claim under § 1983, a plaintiff must "prove a violation of the underlying constitutional right." Daniels v. Williams, 474 U.S. 327, 330 (1986).

---

[3] Note that Count One of the Plaintiffs' Complaint claims violations of the Fifth and Fourteenth Amendments (Compl. at 7), the Count also alleges that Damian Ortiz was improperly arrested and prosecuted, a claim which would properly be based on the Fourth Amendment. See Albright v. Oliver, 510 U.S. 266, 274 (1994) (a section 1983 claim for false arrest is based upon an individual's Fourth Amendment right to be free from unreasonable searches and seizures).

A.  **Plaintiffs Have Failed to Demonstrate a Claim for False Arrest or Malicious Prosecution Under § 1983 Because the Arrest and Prosecution of Damian Was Supported by Probable Cause.**

An arrest based upon probable cause cannot become the source of a claim for false arrest and imprisonment. See Sharrar v. Felsing, 128 F.3d 810, 817-18 (3d Cir. 1997); Winters v. Bonanno, 2005 WL 2090296, *2 (D.N.J., August 30, 2005). The Plaintiff's claims of malicious prosecution under § 1983 similarly require that the criminal action in question be instituted without probable cause.[4]

---

[4] The Plaintiff's claims on this Count are somewhat vague. Count One alleges "violations of the 5th and 14th Amendments," claiming that the Defendants "denied the Plaintiffs Due Process of law in violation of the 5th and 14th Amendments to the Constitution" and that his arrest and prosecution were "improper." (Compl. at 7, Count I, ¶¶ 2-3.) Unlawful detention following an arrest, but before conviction, could be construed to be a violation of the Fourth Amendment if that arrest and detention is without probable cause. See Albright, 510 U.S. at 268 ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it."); Gerstein v. Pugh, 420 U.S. 103, 114-17 (1975) (finding that post-arrest, pre-conviction detention may violate the Fourth Amendment if not supported by probable cause); Torres v. McLaughlin, 163 F.3d 169, 174 (3d Cir.1998) (holding that in § 1983 claims for malicious prosecution, "the Fourth Amendment [applies] to those actions which occur between arrest and pre-trial detention" ). Construing the Plaintiffs' claims in this Count to be based in the Fourth Amendment, therefore, would require a showing that the arrest and subsequent prosecution of Damian were instituted by Detective Malachefski and the DTPD without probable cause.

The Third Circuit has noted that the Supreme Court's decision in Albright v. Oliver, 510 U.S. 266 (1994) "'casts doubt' on prior circuit precedent adopting common law malicious prosecution as the test in a § 1983 action." Merkle v. Upper Dublin School Dist., 211 F.3d 782, 792 (3d Cir. 2000) (citing Gallo v. City of Philadelphia, 161 F.3d 217, 221 (3d Cir.1998)). Even if the Court were to evaluate the Plaintiffs' claims under the common law standard for malicious prosecution, the existence of probable cause remains a "threshold question" in imposing liability under § 1983 for malicious prosecution claims. Merkle, 211 F.3d at 792.

The Plaintiffs' other constitutional claims in this Count lack the specifics for the Court to determine what is the exact nature of the violation being alleged. The Plaintiffs' Complaint appears to be claiming violations of Damian's Due Process rights under the Fourteenth Amendment. The Supreme Court has held, however, that constitutional claims arising from

Detective Malachefski's account of probable cause to arrest Damian is unopposed and uncontested by any evidence or certifications provided by the Plaintiffs in opposition to this motion. Detective Malachefski acted upon information provided to him by Nicole, who identified Damian as one of her attackers. (See Def. Br. at Ex. C (Dover Township Police Department investigation report of Det. Malachefski.)  This information was further supported by Detective Malachefski's subsequent interviews with Benjamin Nisman, the individual whose house the July 2002 party was held at, and Richard Browner, who was in attendance at the July 2002 party. (Id.)  Both of these individuals corroborated Nicole's story and her allegations against Damian. (Id.)  Furthermore, the probable cause to arrest Damian is additionally supported by Damian's own subsequent alocution offered in conjunction with his entering a guilty plea on charges of conspiracy to commit sexual assault.

---

allegedly improper arrest and post-arrest detentions may not be based on Fourteenth Amendment substantive due process rights. See Albright, 510 U.S. at 268 (holding that the substantive due process "can afford [] no relief" to petitioner's claims for improper detention following an arrest).

The Plaintiff also cites to the Fifth Amendment in this Count.  Due to the vagueness of the Plaintiffs' claims, the Court is left to speculate as to the basis of the Plaintiffs' assertion that Damian's Fifth Amendment rights were violated.  Even if the Court were to liberally read the Plaintiffs' apparent Fourth Amendment claim to somehow assert that Detective Malachefski and/or the DTPD denied Damian his Fifth Amendment right to counsel or infringed his right to be free from compelled self-incrimination, summary judgment on this claim would still be warranted.  As the Third Circuit stated, "a plaintiff may not base a § 1983 claim on the mere fact that the police questioned the plaintiff in custody without providing Miranda warnings where there is no claim that the statements obtained in violation of Miranda were used against the plaintiff." Renda v. King, 347 F.3d 550, 557 (3d Cir.2003).  "[V]iolations of the prophylactic Miranda procedures do not amount to violations of the Constitution itself . . . the 'right to counsel' during custodial interrogation recognized in [Miranda] is merely a procedural safeguard, and not a substantive right." Giuffre v. Bissell, 31 F.3d 1241, 1256 (3d Cir.1994).  Therefore, summary judgment is properly granted in favor of the current Defendants on the Plaintiffs' Fifth Amendment § 1983 claims as well.

The issue of whether there was probable cause to make an arrest is usually a question for the jury, but "where no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate." Deary v. Three Un-Named Police Officers, 746 F.2d 185, 192 (3d Cir.1984). The question is for the jury only if there is sufficient evidence whereby a jury could reasonably find that the police officers did not have probable cause to arrest. Id. at 190. Where, as here, no reasonable jury could find that the police lacked probable cause, summary judgment in favor of the current Defendants is appropriate.

**B.  Plaintiffs' Allegations of Excessive Force and Cruel and Unusual Punishment Under § 1983 are Unsupported by the Facts Being Alleged in the Plaintiffs' Complaint.**

Count Three of the Plaintiffs' Complaint allege that the Defendants denied Damian his constitutional rights to protection from "cruel and unusual punishment" in violation of 42 U.S.C. § 1983. (Compl. at 8, Count III, ¶ 2.) While the Eighth Amendment offers convicted inmates protections against cruel and unusual punishment, U.S. CONST. AMEND. IIX, there is no conceivable basis, under the facts being pled in the Plaintiffs' Complaint, for a claim rooted in the Eighth Amendment. While Damian had pled guilty to the charges against him, he was not yet sentenced nor subjected to any form of post-conviction incarceration that would invoke the protections of the Eighth Amendment. See Ford v. Mercer County Correctional Center, 171 Fed. Appx. 416, 420 (3d Cir. 2006) (noting that convicted prisoners are protected from "cruel and unusual punishments" by the Eighth Amendment. (citing Rhodes v. Chapman, 452 U.S. 337, 345-46 (1981)).

The Plaintiff has also failed to plead any violation of the Fourteenth Amendment relating

to Damian's brief detention following his arrest prior to being released into the custody of his mother. While the Fourteenth Amendment offers constitutional protections governing the conditions of pretrial detention, the Plaintiff fails to allege any conditions of this brief post-arrest detention that would constitute unconstitutional "punishment" of a pretrial detainee. See Bell v. Wolfish, 441 U.S. 520, 536-39 (1979). Accordingly, summary judgment in favor of the current Defendants on the Plaintiffs' claims of cruel and unusual punishment in violation of § 1983 is properly granted.

The Plaintiffs' Complaint also asserts that the Defendants "allowed and caused the Plaintiffs to be subject to excessive force" in violation of § 1983. (Compl. at 8, Count III, ¶ 4.) Excessive force claims under § 1983 arising out of law enforcement conduct is based on the Fourth Amendment's protection from unreasonable seizures of the person. Graham v. Connor, 490 U.S. 386, 394-95 (1989). While police officers are privileged to commit a battery pursuant to a lawful arrest, that privilege is negated if the force being used is excessive. Edwards v. City of Philadelphia, 860 F.2d 568, 572 (3d Cir. 1988).

The Plaintiffs' Complaint, however, fails to allege that Damian was subjected to any force at all in his arrest and detention by Detective Malachefski and the DTPD or how that force was in any way excessive or unreasonable. The only offering on this allegation was the assertion that the Defendants violated his constitutional rights by subjecting him to excessive force. Such "[n]aked assertions in the pleadings[, however,] are insufficient to withstand summary judgment." Viger v. Commercial Insurance Co. of Newark, N.J., 707 F.2d 769 (3d Cir. 1983) (citing FED. R. CIV. P. 56(e); Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)). Such a claim, without any further support, does not meet the showing required to create a genuine issue of

material fact under Rule 56. Accordingly, summary judgment in favor of the current Defendants is properly granted on the Plaintiffs' claims of excessive force.

**C.     Summary Judgment in Favor of Detective Malachefski and the DTPD on the Plaintiffs' Claims Under 42 U.S.C. §§ 1985 and 1986 is Appropriate Because the Plaintiffs Fail to Sustain Any Underlying Constitutional Violation as Required to Support These Claims.**

In addition to raising constitutional claims under 42 U.S.C. § 1983, Counts Four and Five of the Plaintiffs' Complaint raise claims under 42 U.S.C. §§ 1985 and 1986 respectively. The Plaintiffs' § 1985 claims allege that the Defendants conspired to deprive Damian of his rights protected by the Constitution. To sustain these claims against the current Defendants' motion for summary judgement, however, would require a showing by the Plaintiff that an underlying constitutional right has been violated to support their allegations of a conspiracy. See Great American Federal Savings and Loan Ass'n v. Novotny, 442 U.S. 366, 372 (1979). For the reasons noted above, however, the Plaintiffs have failed to make such a showing.

The Plaintiffs' § 1986 claims are a companion to their § 1985 claims by alleging that the Defendants, having prior knowledge of and the power to prevent the constitutional violations alleged under § 1985, neglected or refused to prevent them. Rogin v. Bensalem Tp., 616 F.2d 680, 696 (3d Cir. 1980), cert. denied, 450 U.S. 1029 (1981). "Transgressions of § 1986 by definition depend on a preexisting violation of § 1985."[5] Clark v. Clabaugh, 20 F.3d 1290, 1295

---

[5] "In addition to establishing the existence of a Section 1985 conspiracy, a plaintiff asserting a claim under Section 1986 must demonstrate that: '(1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in

(3d Cir. 1994). Therefore, the Plaintiffs' § 1986 claims also require them to prove a violation of the underlying constitutional right which forms the basis of their § 1985 claims. Because, for the reasons stated above, the Plaintiffs have failed to show any violation of Damian's constitutional rights by the current Defendants, summary judgment in favor of Defendants DTPD and Detective Malachefski on the Plaintiffs' § 1985 and § 1986 claims is proper.

D.   **Plaintiffs Claims of Intentional Infliction of Emotional Distress**

Count Ten of the Plaintiffs' Complaint alleges that, due to the intentional acts of the Defendants, the Plaintiffs "were caused to suffer great emotional stress and emotional harm." (Compl. at 12, Count X, ¶ 2.) As noted in an earlier opinion by this Court on this matter, to sustain a claim for infliction of emotional distress upon a close relative of a decedent, the Plaintiff must demonstrate that the distress be caused by that relative's first hand observation of the death itself. Ortiz v. Ocean County Prosecutor's Office, 2005 LEXIS 29274, *14 (D.N.J. Nov. 22, 2005) (citing Portee v. Jaffee, 84 N.J. 88, 101 (1980)). It is not alleged that any of the Plaintiffs witnessed Damian's suicide. The Plaintiffs' claims are based on their discovery of Damian's body after he committed suicide in the garage of the family home. Id. While "[d]iscovering the death or serious injury of an intimate family member will always be expected

---

preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed.'" White v. Williams, 179 F.Supp.2d 405, 422 (D.N.J. 2002) (quoting Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994)). If summary judgment is granted on the § 1985 claims, the Court must also grant summary judgment as to the § 1986 claims. Clark, 20 F.3d at 1295 n. 5 ("In order to maintain a cause of action under § 1986, the plaintiffs must show the existence of a § 1985 conspiracy. Any issue of material fact in a § 1986 action presupposes and relates to a § 1985 conspiracy. Thus, if the elements of the § 1985 conspiracy are missing, a § 1986 cause of action is properly dismissed on summary judgment.")

13

to threaten one's emotional welfare," without direct observation of the death or serious injury, "the threat of emotional injury is lessened and the justification for liability is fatally weakened." Portee, 84 N.J. at 99. Because the Plaintiffs' claim for intentional infliction of emotional distress brought by Damian's family members against the current Defendants is not one that is recognized under New Jersey Law, this claim must be dismissed.

The Plaintiffs also raise a claim on behalf of the decedent, Damian Ortiz, for intentional infliction of emotional distress. For intentional infliction of emotional distress, Plaintiffs must allege, among other criteria, "intentional and outrageous conduct by the defendant." Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 366 (1988). To sustain such a claim, the conduct at issue must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting RESTATEMENT (SECOND) OF TORTS § 46 comment d (1965)).

The only basis of the Plaintiffs' claim on Damian's behalf appears to be the investigation of Damian and his subsequent arrest by Detective Malachefski and the DTPD. As noted above, however, the investigation, arrest, and prosecution of Damian was supported by probable cause to pursue these activities. These actions, therefore, cannot reasonably be characterized as the type of extreme and outrageous behavior that is required to support a claim of intentional infliction of emotional distress. Accordingly, summary judgment in favor of the current Defendants on the Plaintiffs' Claim brought on behalf of Damian Ortiz for intentional infliction of emotional distress is properly granted.

## IV. CONCLUSION

For the reasons stated above, and for good cause shown, the Defendants' Motion for Summary Judgment is hereby **GRANTED**.  An appropriate form of order will be filed herewith.


Date:   August 17, 2006


                                                                                s/Stanley R. Chesler
                                                                  Stanley R. Chesler, U.S.D.J.