NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELO ORTIZ, et. al., <br><br> Plaintiffs, <br><br> v. <br><br> OCEAN COUNTY PROSECUTOR'S OFFICE, et. al., <br><br> Defendants. | CIVIL NO. 03-3732 (SRC) <br><br> **OPINION** |

**CHESLER, District Judge**

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendant Elizabeth Dante ("Defendant" or "Dante") [docket entry # 76]. The Court, having considered the papers submitted, for the reasons set forth below, and for good cause shown, **GRANTS** Defendant's Motion.

I.  PROCEDURAL BACKGROUND

On August 7, 2003, Plaintiffs filed a ten-count Complaint asserting causes of action for alleged violations of the Fifth and Fourteenth Amendments (Count One), Deliberate Indifference (Count Two), violations of 42 U.S.C. §§ 1983, 1985, and 1986 (Counts Three, Four and Five), Negligence (Count Six), Defamation (Count Seven), Abuse of Process (Count Eight), Malicious Prosecution (Count Nine), and Intentional Infliction of Emotional Distress (Count Ten). (See Compl.) Plaintiffs are the mother, father, and siblings of Damian Ortiz. (Id. at 2 ¶¶ 1 - 4.) The lawsuit alleges causes of

action by the Plaintiffs individually and on behalf of Damian Ortiz.  Only Counts Seven through Ten of the Plaintiffs' Complaint bring allegations against the current Defendant, Elizabeth Dante, who is the mother of the victim, Nicole Ward.  This Defendant has moved for summary judgment in her favor on the Plaintiffs' claims against her and for dismissal.

The present motion was filed on August 3, 2006.  Plaintiffs have not filed an opposition.[1]  The Defendants' motion includes a copy of Plaintiffs' Complaint (Ex. A) and a transcript of Damian Ortiz' guilty plea (Ex. B). The Plaintiffs have submitted nothing to refute the information proffered by the Defendants in this matter, and, as a result, the Court must deem the Defendants' current motion for summary judgment unopposed and handle it accordingly.

## II.     FACTS

This origins of this case arise from the investigation, prosecution, and subsequent guilty plea of Plaintiffs' decedent, Damian Ortiz, on charges that he, along with several of his friends, sexually assaulted Defendant Nicole Ward, daughter of

---

[1]Nor did the Plaintiffs oppose the previous motion for summary judgment, brought by Dover Township Police Department and Michael Malachefski, a detective with the Dover Township Police Department, and filed with this Court on November 2, 2005 [docket # 66].  On December 5, 2005, Plaintiffs' counsel requested an extension of time, giving them until December 9, 2005 to respond– citing severe medical problems as the main reason for this request.  The Court granted this extension on December 8, 2005.  After the December 9th deadline, the Court made numerous attempts to contact Plaintiffs' counsel to obtain a status on their opposition to the pending motion.  These attempts were unsuccessful in soliciting an opposition to the motion.  Finally, on July 18, 2006, this Court issued an Order [docket # 76] requiring the Plaintiffs to file their opposition on or before August 1, 2006 or the motion would be deemed unopposed.  No response was received and the motion was granted as unopposed.  It appears Plaintiffs may have abandoned their suit.

Defendant and Movant Elizabeth Dante. Damian was, at the time of this incident, seventeen years old and enrolled in the twelfth grade at Toms River High School ("TRHS"). Defendant Nicole Ward was, at the time of this incident, sixteen years old and also attended TRHS. Nicole was enrolled in the tenth grade, although she had been diagnosed with some developmental disabilities and had been classified as a special education student.

In January 2002, Nicole told one of her teachers at TRHS, Ms. Sofie, that she had been sexually assaulted by Damian and others while attending a party in July 2002. The party was held by Defendant Gail Nissman's son at Ms. Nissman's residence in Toms River, New Jersey. Ms. Sofie reported this information to the school's Assistant Principal, Defendant Anne Baldi. Ms. Baldi subsequently called the Dover Township Police Department ("DTPD") to report Nicole's allegations.

Defendant Michael Malachefski, a detective with the DTPD, advised Ms. Baldi that he should take a report on this incident directly from Nicole. Ms. Baldi provided Detective Malachefski with the contact information for Nicole's mother, Defendant Elizabeth Dante. On or about February 1, 2002, Nicole and her mother came into the police department to file a complaint accusing Damian and others of sexually assaulting her at the July 2002 party. Detective Malachefski obtained Ms. Dante's consent to interview Nicole privately and took a statement from her regarding the incident at the July 2002 party. Following additional investigation of the charges by Detective Malachefski, a complaint was filed against Damian for aggravated sexual assault and criminal restraint on or about February 14, 2002. Later that day, Detective Malachefski, along with a fellow detective and a patrolman from the DTPD went to TRHS to take

Damian into custody.  Damian was subsequently arrested at school and, according to the Plaintiffs' Complaint, questioned by the police at the school for forty-five minutes before his parents, Plaintiffs Angelo and Elaine Ortiz, were called.[2]  Damian was transported to the police station and placed into a juvenile holding cell.  Detective Malachefski informed Ocean County Juvenile Intake to advise them of Damian's arrest and the charges being brought against him.  Damian was fingerprinted, photographed, and released into the custody of his mother, Elaine Ortiz.

On or about August 22, 2002, Damian pled guilty to downgraded charges of conspiracy to commit sexual assault against Nicole Ward.  The state court judge accepted Damian's plea after questioning his understanding of the plea bargain, his knowledge of his rights, and the voluntariness of his decision to enter the guilty plea..  The plea hearing revealed the following account regarding the incident involving the sexual assault.  Nicole Ward was sexually assaulted on July 25, 2001.  (Def. Br., Ex. B at 13-15.)  On that day, Damian Ortiz and two of his friends invited Nicole to a party. (Id. at 10-11.)  One of those friends picked up Nicole and brought her to the party held at Ms. Nissman's home.  (Id. at 11.)  Damian was already at the party and before Nicole's arrival, he and his friends talked about having sex with Nicole that afternoon

---

[2] It is worth noting that this account differs from the report filed by the DTPD. According to the police report, Damian was handcuffed and transported to the police station and placed in a juvenile holding cell.  (Dover Township Police Dept. Supp. Investigation Rpt. at 12.)  Damian remained in this cell while police tried to notify his parents.  (Id.)  Upon reaching Damian's father, Mr. Ortiz advised the police that he was not coming to pick up his son, and they did not have consent to talk to Damian about the crime under investigation.  (Id.)  When advised of the charges against him, and his father's response, Damian made an angry response claiming that he was innocent and that Ms. Ward was a willing participant in the sexual activity at the July 2002 party.  (Id. at 13.)

- 4 -

regardless of "whether she was up for it." (Id. at 12.)  Damian believed that Nicole would have sex with whomever wanted it. (Id. at 13.)  Although Damian claimed he did not have sexual contact with Nicole that afternoon, he was aware that others were upstairs in a room with her.[3] (Id.)  He later learned that while in that room, several people did have sexual contact with her.  (Id. at 14.)  When she emerged from the room, Damian described Nicole to be laughing and not upset, but also admitted that he and others spit at her and called her names.  (Id. at 15.)

As part of Damian's plea bargain, he agreed to testify truthfully against another individual implicated in the sexual assault.  Before testifying, however, Damian committed suicide on October 27, 2002 by hanging himself in the garage of his family's home.  Subsequently, in August 2003, Plaintiffs filed a ten-count Complaint in this Court contending, among other things, that their son's suicide was prompted by his desire "not to falsely testify or to face the possibility of spending a substantial portion of his life in prison for an act he did not commit."  (Compl. at 5, ¶ 17.)  The Plaintiffs' claims against the current Defendant, Elizabeth Dante, assert that she "defamed the Plaintiffs' son" by "filing a false complaint against Damian Ortiz and compelling the Defendants to prosecute him," (Id. at 10); "engaged in a willful, improper, and perverted use" of the criminal process, (Id.); and "intentionally and knowingly caused the wrongful prosecution of the Plaintiffs' son by making knowingly false statements to the police," (Id. at 11).  These actions, it is alleged, led directly to Damian's criminal prosecution,

---

[3] Damian's allocution differed from Nicole's account of the events of that day in that Nicole specifically identified Damian as one of the individuals who she accused of raping her on that day. (Statement of Nicole Ward 45-57, Feb. 2, 2002.)

guilty plea, and subsequent suicide. Dante has sought summary judgment in her favor on all counts brought against her.

### III.   DISCUSSION

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996). In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party, even where, as here, the non-moving party has not opposed the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue

of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold").

> A. **Plaintiffs Have Failed to Demonstrate a Claim of Defamation Because Defendant's Statements to Police Are Protected by a Qualified Privileged.**

In Count Seven of their Complaint, Plaintiffs allege that "by filing a false complaint against Damian Ortiz and compelling the other Defendants to prosecute him" Defendant Dante defamed the Plaintiffs' son. Under New Jersey law, a statement is defamatory if "it is false, communicated to a third person, and tends to lower the subject's reputation in the estimation of the community or to deter third persons from associating with him." Lynch v. N.J. Educ. Ass'n, 161 N.J. 152, 164-165 (N.J. 1999) (citing RESTATEMENT (SECOND) OF TORTS §§ 558, 559 (1977)). As a matter of law, Plaintiffs have failed to demonstrate a claim of defamation.

A statement charging a criminal violation, made to a law-enforcement official, is qualifiedly privileged. Williams v. Bell Tel. Labs. Inc., 132 N.J. 109, 120 (1993). A qualified privilege, such as this, "is designed to advance the important public interest in unrestrained speech while retaining a measure of protection for the plaintiff who is maliciously defamed." Fees v. Trow, 105 N.J. 330, 337 (1987). As such, abuse of the privilege may result in defamation. The privilege is abused if (1) the publisher knows the statement is false or if the publisher acts in reckless disregard of its truth or falsity, see Dairy Stores, Inc. v. Sentinel Publishing Co., 104 N.J. 125, 151 (1986); (2) the publication serves a purpose contrary to the interests of the privilege, see Bainhauer v.

Manoukian, 215 N.J. Super. 9, 43 (N.J. Super. Ct. App. Div. 1987); or (3) the statement is excessively published.  Id.  And, "[b]ecause a qualified privilege is favored with a presumption that there was no express malice, plaintiff carries the burden of establishing that the statements complained of were made from an indirect or improper motive, and not for a reason which would otherwise render them privileged." Fees, 105 N.J. at 342.

In the present case, the statement in question was made by Elizabeth Dante to the Dover Township Police Department regarding a criminal violation– the sexual assault of her daughter.  Therefore, her statements are protected by the qualified privilege covering statements made to law enforcement officials.

Construing the facts in the light most favorable to the non-movant, there is no issue of fact sufficient to permit a conclusion that Elizabeth Dante made her statement to the police any sort of malicious or improper motive that would remove her statements from the protection of this privilege.  Moreover, in his allocution, Damian Ortiz himself admitted most of the conduct contained in Dante's report to the police.  On August 22, 2002, Damian appeared before the Honorable Barbara A. Villano in the Superior Court of New Jersey, where he was examined by the Court and the county prosecutor regarding his guilty plea.  (Tr. of Plea at 6-16.)  Damian acknowledged that he wanted to plea guilty to the fourth-degree charge in return for the dismissal of the higher charges against him.  (Id. at 7.)  Damian described a devised plan to sexually assault Nicole Ward, a young girl with mental disabilities.  Considering this admission, to the extent that Defendant's statement differs from Plaintiffs' version, the Court "does not detect a difference so sharp as to permit an inference that Defendant contrived the

story primarily to harm plaintiff." See Fees, 105 N.J. at 343 (affirming grant of summary judgment to defendant on defamation claim based on defendant's report of plaintiff's criminal conduct where defendant admitted the "essential features" of defendant's report).

For the reasons stated above, Elizabeth Dante's filing of the complaint against Damaian Ortiz did not constitute a defamatory statement, and, as such, summary judgment in favor of Defendant Dante on the Plaintiffs' defamation claim is proper.

    **B.    Summary Judgment Must be Granted to Defendant Dante on the Malicious Prosecution Claim Because the Arrest of Damian Ortiz Was Supported by Probable Cause.**

In Count Nine of their Complaint, Plaintiffs allege that "Defendant Dante intentionally and knowingly caused the wrongful prosecution of Plaintiffs' son by making knowingly false statements to police and other officials regarding the Plaintiffs' son, which caused the criminal indictment of Plaintiffs' son." Generally, "malicious prosecution is not a favored cause of action because citizens should not be inhibited in instituting prosecution of those reasonably suspected of crime." Lind v. Schmidt, 67 N.J. 255, 262 (1975). In order to demonstrate malicious prosecution arising out of a criminal prosecution, the plaintiff must prove: (1) that the criminal action was instituted by the defendant against the plaintiff; (2) that it was actuated by malice; (3) that there was an absence of probable cause for the proceeding; and (4) that it was terminated favorably to the plaintiff. See, e.g., Helmy v. City of Jersey City, 178 N.J. 183, 190 (2003). The existence of probable cause is an absolute defense to a malicious prosecution claim. Wildoner v. Borough of Ramsey, 162 N.J. 375, 389 (2000).

This Court has previously determined that probable cause to arrest Damian Ortiz existed. See Ortiz v. Ocean County Prosecutor's Office, No. 03-3732, 2006 U.S. Dist. LEXIS 58269, at *15 (D.N.J. Aug. 17. 2006) (granting summary judgment to defendants Dover Township Police Department and Michael Malachefski). The Court relied on Detective Malachefski's account of the arrest, submitted in connection with a prior summary judgment motion, and uncontested by any certification or evidence provided by the Plaintiffs in opposition to that earlier summary judgment motion. Id. Detective Malachefski acted upon information provided to him by Nicole, who identified Damian as one of her attackers. (See Dover Township Police Department investigation report of Det. Malachefski.) This information was further supported by Detective Malachefski's subsequent interviews with Benjamin Nisman, the individual whose house the July 2002 party was held at, and Richard Browner, who was in attendance at the July 2002 party. (Id.) Both of these individuals corroborated Nicole's story and her allegations against Damian. (Id.) Furthermore, the probable cause to arrest Damian is additionally supported by Damian's own subsequent allocution offered in conjunction with his entering a guilty plea on charges of conspiracy to commit sexual assault.

The issue of whether there was probable cause to make an arrest is usually a question for the jury, but "where no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate." Deary v. Three Un-Named Police Officers, 746 F.2d 185, 192 (3d Cir.1984). The question is for the jury only if there is sufficient evidence whereby a jury could reasonably find that the police officers did not have probable cause to arrest. Id. at 190.   Where, as here, no reasonable jury could find that the police lacked probable cause, summary judgment in

favor of the current Defendants is appropriate.

### C. The Facts Alleged in Plaintiffs' Complaint Cannot Support a Claim of Abuse of Process.

Plaintiffs allege, in Count Eight of their Complaint, that "Defendant Dante instigated a criminal process against Damian, in the form of a criminal Complaint," and that, "[a]s a result, the Defendant engaged in a willful, improper, and perverted use of the process to accomplish a result outside the lawful scope of such process." An action for abuse of process will lie for "the improper, unwarranted, and perverted use of process after it has been issued." Earl v. Winne, 14 N.J. 119, 147 (1953) (citing Ash v. Cohn, 119 N.J.L. 54 (N.J. 1937)). While malicious prosecution is "the employment of the process for its ostensible purpose, although without reasonable or probable cause," the malicious abuse of process "is the employment of a process in a manner not contemplated by law." Id.

To set forth a claim of malicious abuse of process, a plaintiff must prove two elements: (1) that defendants made an improper, illegal, and perverted use of the process, i.e., a use neither warranted nor authorized by the process, and (2) that in use of such a process there existed an ulterior motive to coerce or oppress the plaintiff. See, e.g., Ash, 119 N.J.L. at 58. Essentially, "the test is ... whether the process has been used to accomplish some unlawful end, or to compel defendant to do some collateral thing which he could not legally be compelled to do." Id. at 59. Central to the tort of malicious abuse of process "is the requirement that the defendant perform 'further acts' after issuance of process 'which represent the perversion or abuse of the legitimate purposes of that process.'" Baglini v. Lauletta, 338 N.J. Super. 282, 294 (N.J.

Super. Ct. App. Div. 2001).  For example, in Tedards v. Auty, 232 N.J. Super. 541, 549 (N.J. Super. Ct. App. Div. 1998), the plaintiff alleged that after the issuance of the writ, the defendant knowingly and materially misrepresented to a judge the record of a previous family action in order to justify setting a high bail and threatened the plaintiff with reincarceration under the writ as a means of extorting settlement.  The court in Tedards found these acts sufficient to establish the elements of an abuse of process.

To the contrary, here, viewing the underlying facts and drawing all inferences in light of the non-moving party, there is no allegation by Plaintiffs of any further act after or other than the filing of the initial criminal complaint.  The alleged abuse of process here consist only of Dante's filing the criminal complaint against Damian Ortiz, and nothing more.  Moreover, Defendant Dante's legitimate motive in making the complaint– to report the sexual assault of her daughter– is bolstered by Damian's own subsequent allocution offered in conjunction with his entering a guilty plea on charges of conspiracy to commit sexual assault.  Because no further acts have been alleged, Dante's conduct cannot, as a matter of law, constitute abuse of process.  See Klesh v. Coddington, 295 N.J. Super. 51, 64 (N.J. Super. Ct. App. Div. 1996) (granting summary judgment to defendant on malicious abuse of process claim where there was "no further act, no threats or abuse of process whatsoever").  As no reasonable jury could find that Defendant Dante's conduct constituted malicious abuse of process, summary judgment in favor of Defendant Dante on the malicious abuse of process claim is appropriate.

>   **D.    As a Matter of Law, Plaintiffs Have Failed to Establish Their Claim for Intentional Infliction of Emotional Distress**.

Count Ten of the Plaintiffs' Complaint alleges that, due to the intentional acts of

the Defendants, the Plaintiffs "were caused to suffer great emotional stress and emotional harm." As noted in an earlier opinion by this Court on this matter, to sustain a claim for infliction of emotional distress upon a close relative of a decedent, the plaintiff must demonstrate that the distress be caused by that relative's first hand observation of the death itself. Ortiz v. Ocean County Prosecutor's Office, No. 03-3732, 2005 LEXIS 29274, *14 (D.N.J. Nov. 22, 2005) (citing Portee v. Jaffee, 84 N.J. 88, 101 (1980)). It is not alleged that any of the Plaintiffs witnessed Damian's suicide. The Plaintiffs' claims are based on their discovery of Damian's body after he committed suicide in the garage of the family home. Id. While "[d]iscovering the death or serious injury of an intimate family member will always be expected to threaten one's emotional welfare," without direct observation of the death or serious injury, "the threat of emotional injury is lessened and the justification for liability is fatally weakened." Portee, 84 N.J. at 99. Because the Plaintiffs' claim for intentional infliction of emotional distress brought by Damian's family members against the current Defendants is not one that is recognized under New Jersey Law, this claim must be dismissed.

      The Plaintiffs also raise a claim on behalf of the decedent, Damian Ortiz, for intentional infliction of emotional distress. For intentional infliction of emotional distress, Plaintiffs must allege, among other criteria, "intentional and outrageous conduct by the defendant." Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 366 (1988). To sustain such a claim, the conduct at issue must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting RESTATEMENT (SECOND) OF TORTS § 46 comment d (1965)).

The only basis of the Plaintiffs' claim on Damian's behalf appears to be the investigation of Damian and his subsequent arrest by Detective Malachefski and the DTPD.  As noted above, however, the investigation, arrest, and prosecution of Damian was supported by probable cause to pursue these activities.  These actions, therefore, cannot reasonably be characterized as the type of extreme and outrageous behavior that is required to support a claim of intentional infliction of emotional distress.  Accordingly, summary judgment in favor of the current Defendants on the Plaintiffs' Claim brought on behalf of Damian Ortiz for intentional infliction of emotional distress is properly granted.

## IV.   CONCLUSION

For the reasons stated above, and for good cause shown, the Defendant's Motion for Summary Judgment is hereby **GRANTED**.  An appropriate form of order will be filed herewith.

Date:  October 13, 2006

    s/Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.